[Civ. No. 44543. First Dist., Div. Four. Mar. 23, 1979.]

MACK HENRY PAGE III, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Harold J. Truett, Public Defender, and Frank J. Cox, Chief Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Linda Ludlow, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**RATTIGAN, J.**—In an indictment returned in respondent court, the Marin County Grand Jury charged petitioner Mack Henry Page III with the murder of Sandra Corbin in violation of section 187 of the Penal Code.[1] The grand jury also alleged in the indictment, among "special circumstances" which may permit punishment by death pursuant to section 190, that the murder had been committed during the commission of a kidnaping. Petitioner made a series of pretrial motions for orders setting aside the indictment or striking the allegations of special circumstances from it. He also moved for an order suppressing certain evidence. Respondent court denied his motions. Petitioner thereupon commenced the present proceeding by petitioning this court for extraordinary relief from the orders of denial.

The motions were made on separate and overlapping grounds, and in a complicated procedural sequence. The pertinent sequence commences with the evidence received by the grand jury relative to the commission of the murder and a kidnaping. It supports these recitals:

Sandra Corbin (hereinafter Sandra) had lived with petitioner until January, 1978,[2] when she left him after he had repeatedly beaten her and threatened to kill her. She moved into a house in San Rafael with Kenneth Blasingame and others. Petitioner continued his threats to kill her, and she expressed fear of him, while she was living there. Blasingame last saw her during an episode at the house on April 7. He described the episode to the grand jury as follows:

On the evening of April 7, he and Sandra arrived at the house with Ellen Adams and Horace Jackson. Petitioner drove up while they were still outside, stepped out of his automobile, and asked Sandra to come over to the car and talk to him. "She replied that she didn't want to talk to him. She didn't want to see him. She just wanted him to go away." He repeated the request, which she declined again. He was holding his hand in a concealed position during this conversation. Blasingame thought he was carrying a gun. Because he knew that petitioner had previously beaten Sandra, he brought his own gun out of the house for her protection.

---

[1] All statutory references are to the Penal Code.

[2] All dates mentioned refer to the calendar year 1978 except where otherwise indicated.

After Sandra had declined petitioner's second request, he approached her and "whispered something in her ear." She handed a bag of groceries to Ellen Adams, walked over to petitioner's automobile, and entered it after he said "Get in the car." Blasingame did not tell the grand jury that Sandra said anything before she entered the vehicle. It was driven away a few minutes later. Blasingame did not again see Sandra alive after this episode. He alone described it to the grand jury; Ellen Adams and Horace Jackson did not testify.

Officer Hayter, of the San Rafael Police Department, testified that he and other officers learned on April 8 that Sandra had disappeared and that her purse had been found in Vallejo. They also learned that she had last been seen with petitioner on April 7, and of their former relationship, as described above. At midafternoon on April 8, Officer Hayter broadcast a bulletin for the arrest of petitioner on a charge of kidnaping.

Sandra's body was found that night at a roadside location in Sonoma County. She had been killed by two gunshots fired at close range. Officer Hayter arrested petitioner in Vallejo on the early morning of April 9. He impounded petitioner's automobile, executed an affidavit in support of a warrant authorizing its search, obtained the warrant, and searched the vehicle in San Rafael on April 11. He seized several items in the automobile. He also found blood stains in the area of the front seat on the passenger side.

Under police interrogation conducted on April 9, petitioner waived his *Miranda* rights and gave this version of Sandra's death: After he had picked her up at Blasingame's residence on April 7, he drove her to a parking lot in Terra Linda. They quarreled about their relationship. Petitioner threatened to kill himself with a gun which was on the floor of his automobile. Sandra seized the gun, they grappled for it, and she was shot when it was discharged during the struggle. When petitioner realized that she was dead, he drove north to Sonoma County and left her body at the roadside location where it was found on April 8.

### Procedural Sequence

The indictment charging petitioner was returned in respondent court on April 26. In its first two paragraphs, petitioner is accused of having murdered Sandra on April 7 in violation of section 187. The "special circumstances" appear in a trailing paragraph, where it is alleged that "the murder . . . was willful, deliberate, and premeditated, and . . . was

personally committed by defendant during the commission or attempted commission of a kidnaping in violation of Sections 207 and 209 of the Penal Code."[3]

Petitioner was arraigned and entered a plea of not guilty to the murder charge. He thereupon made the series of motions mentioned. They were complicated in format and sequence, but they effectively included (1) a written motion, made pursuant to section 995, for an order striking from the indictment the special-circumstance allegation that the murder had been "committed . . . during the commission . . . of a kidnaping in violation of Sections 207 and 209" (see the text at fn. 3, *ante*) upon the ground that the evidence received by the grand jury did not show that a kidnaping in violation of either section had occurred; (2) a written section 995 motion for an order striking the entire indictment on the ground that the district attorney had concealed ("hidden") from the grand jury two items of evidence which involved Kenneth Blasingame and which, petitioner contended, would have had an "exonerating impact" when Blasingame testified to the grand jury; (3) an oral motion to strike the special-circumstance allegation of a "kidnaping" on the same ground;[4] and (4) a motion, pursuant to section 1538.5, for an order suppressing the evidence seized and seen in petitioner's automobile, by Officer Hayter, when the warrant authorizing the search of the vehicle was executed on April 11. The section 1538.5 motion challenged the validity of the warrant on the ground that the "exonerating" evidence concealed from the grand jury had also been omitted from Officer Hayter's affidavit on which the warrant was issued.

[3]This language constitutes allegations of "special circumstances," which may support the imposition of the death penalty as punishment for Sandra's murder, by incorporating the following language of section 190.2: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the following *special circumstances* has been charged and specially found, in a proceeding under Section 190.4, to be true: . . . [¶] (c) The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following *additional circumstances* exists: . . . [¶] (3) The murder was willful, deliberate, and premeditated and was committed *during the commission or attempted commission* of any of the following crimes: . . . [¶] (ii) Kidnaping in violation of *Section 207 or 209*. . . ." (Italics added.)

Section 207 defines the crime of so-called "ordinary kidnaping." Section 209, which defines the crime of so-called "kidnaping for ransom or reward," provides in pertinent part: "Any person who . . . kidnaps . . . any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for *ransom, reward* or *to commit extortion* or *to exact* from relatives or friends of such person *any money or valuable thing*, . . . is guilty of a felony . . . ." (Italics added.)

[4]This motion was made when respondent court heard the others. It was not explicitly made pursuant to section 995.

At a consolidated hearing on these motions, the two items of so-called "exonerating" evidence were shown in declarations and in testimony by Officer Hayter. The first item was police information to the effect that Blasingame had been engaged in narcotics traffic before he testified in the grand jury proceedings. Some of this information, but not all of it, had been brought out in his testimony to the grand jury.

The second item appeared in a report compiled by the San Rafael Police Department during its initial investigation of Sandra's disappearance. The report quoted Blasingame as having told Officer Hoke of certain statements Sandra had made before she entered petitioner's automobile on April 7.[5] Officer Hayter testified that he had not known of these statements when he executed the affidavit in support of the search warrant, but that he had learned of them before he appeared in the grand jury proceedings. They were nevertheless not made known to the grand jury.

After the several motions had been submitted, respondent court filed a memorandum decision (order re pretrial motions) in which it effectively made separate orders denying all of them. Petitioner challenged these orders by filing in this court a "Petition For A Writ Of Mandate And/Or Prohibition." We directed the issuance of an alternative writ of mandate, to which the Attorney General has filed a return on behalf of the People as real party in interest.

REVIEW

For reasons which will appear, the only orders requiring review are those in which respondent court (1) denied the section 995 motion insofar as it sought an order dismissing the indictment on the ground that the district attorney had withheld the "exonerating" evidence from the grand

---

[5]Blasingame described these statements in a tape-recorded interview with Officer Hoke on April 9. A transcript of the interview was produced in support of petitioner's motions. A portion of it recounts Blasingame's version of the April 7 episode as he later described it to the grand jury, commencing at the point where petitioner first asked Sandra to talk to him and she declined. Slightly edited for clarity, this portion quotes Blasingame in pertinent part as follows: ". . . Mack Henry [petitioner] . . . walked up to Sandy and he said something in her ear. . . . I couldn't hear what was said. . . . Sandy turned around and handed the groceries to Ellen . . . and she stood there and she shook her head and . . . I said 'Sandy, don't get in the car.' She said 'No, it's going to be all right. All he wants to do is talk.' I said, 'I'm telling you, don't get in the car' and . . . she said to me, 'I'm sure it's going to be all right. I'm just going to talk to him for a minute.'. . . And at that point, . . . after he'd whispered in her ear . . . [petitioner] . . . went right back around the car and was standing by the driver's door and he said, 'Come on over here,' and at that point she walked up to the car . . . [and] . . . got in . . . ."

jury; (2) denied the oral motion to strike the special-circumstance allegation of a "kidnaping" (see the text at fn. 3, *ante*) on the same ground; and (3) denied the section 1538.5 motion on grounds involving the same evidence. We proceed in this numerical sequence.

### The Order Denying the Section 995 Motion to Dismiss the Indictment (Order No. 1)

Petitioner contends that this motion should have been granted pursuant to *Johnson* v. *Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], in which the Supreme Court ordered the issuance of a writ of prohibition restraining prosecution on an indictment returned by a grand jury from which the district attorney had withheld "evidence reasonably tending to negate guilt" of the crimes charged. (*Id.,* at pp. 250-251.)

■ The question on the section 995 motion to dismiss the indictment was whether petitioner had been indicted for Sandra's murder "without reasonable or probable cause."[6] He did not establish this on the motion, by showing concealment of the information relative to Blasingame's past involvement with narcotics, because that information was not "evidence reasonably tending to negate guilt" of the murder. (Compare *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at pp. 251-252.)

If the district attorney had a duty to disclose this information because of its bearing upon Blasingame's credibility as a material witness (see *People* v. *Ruthford* (1975) 14 Cal.3d 399, 405-408 [121 Cal.Rptr. 261, 534 P.2d 1341]; *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at p. 255), enough of it was brought out in his testimony to alert the grand jury in this regard. Respondent court stated in order No. 1 that the information "was in general made known to the grand jury to the extent required by *Johnson* v. *Superior Court* . . . and if further information relating thereto was desired by the grand jury, it had the power to acquire the same." This statement correctly recited the facts and applied the controlling law. (§ 939.7; see *Johnson* v. *Superior Court, supra,* at pp. 254-255.) The concealment of any part of this information does not entitle petitioner to relief from order No. 1.

---

[6]Section 995 provides in pertinent part: "The indictment or information must be set aside by the court in which the defendant is arraigned, upon his motion, in . . . the following cases: [¶] If it be an indictment: . . . [¶] 2. That the defendant has been *indicted without reasonable or probable cause.* . . ." (Italics added.)

■ The same is true of the evidence of the statements which Blasingame quoted Sandra as having made before she entered petitioner's automobile on April 7. (See fn. 5, *ante.*) This evidence was relevant to the question of a kidnaping, which emerged in the grand jury's special-circumstance allegation that one had been committed (see the text at fn. 3), but it was again not "evidence reasonably tending to negate guilt" of the murder charged in the indictment. The apparent concealment of this evidence from the grand jury does not entitle petitioner to relief from order No. 1. (Compare *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at pp. 251-252.)

### The Order Denying the Oral Motion to Strike (Order No. 2)

We have pointed out that this motion was made in the context of petitioner's section 995 motions addressed to the indictment at large and to the special-circumstance allegation of a kidnaping, but that it challenged only the allegation on the ground that the district attorney had withheld from the grand jury the two items of evidence which involved Blasingame as described above. (See the text at fn. 4, *ante.*) It was similarly made on the authority of *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248. The evidence *presented* to the grand jury may support the challenged allegation,[7] but its sufficiency in that regard does not meet the question whether *Johnson* applies because of the evidence *not* presented.

The concealment of the evidence of Blasingame's past involvement with narcotics could produce no *Johnson* effect because none of it pertained to the "commission of a kidnaping" as charged in the allegation. The evidence of the statements he attributed to Sandra in his interview with Officer Hoke (quoted in fn. 5, *ante*) was diametrically pertinent to the allegation because it tended to show that Sandra did not

---

[7]We perceive nothing in the evidence to support the inference that petitioner kidnaped Sandra after they left Blasingame's house together. Blasingame's testimony alone supports the inference that a kidnaping was committed there. It does this to the extent that it tends to show that Sandra was in fear of petitioner on April 7, that she might have shared Blasingame's apprehension that petitioner was armed when he spoke to her that evening, and that she entered his automobile in response to something he "whispered in her ear." The inference follows that she entered the vehicle under the compulsion of a "whispered" threat of physical harm if she refused. These inferences are by no means compelling, but a one-sided view of them rationally supports the determination that petitioner kidnaped her at that moment, in violation of section 207, although she did not enter his automobile under actual physical force or audible threats. (Cf. *People* v. *Thompson* (1967) 252 Cal.App.2d 76, 87-88 [60 Cal.Rptr. 203]; *People* v. *Gomez* (1967) 252 Cal.App.2d 844, 858 [60 Cal.Rptr. 881].) Whether they support the same determination as to a violation of section 209 is another question upon which we comment later.

enter petitioner's automobile under the compulsion of threat or fear: i.e., that a kidnaping did *not* occur. (Compare the opposing inferences summarized in fn. 7.)

■   It is undisputed that the district attorney withheld this evidence from the grand jury despite his foreknowledge of it. The rule of *Johnson* voids an indictment where a prosecutor has withheld from the grand jury "evidence reasonably tending to negate guilt" of the crimes charged. (*Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at pp. 250-251.) The terminal question is whether the rule will void a special-circumstance allegation of a kidnaping, in a prosecution for murder, if he similarly withholds "evidence reasonably tending to negate" the determination that a kidnaping has been committed.

The *Johnson* court rested its holding on the premise that a district attorney is obligated to give a grand jury evidence favorable to an accused, as well as against him, because of the peculiarly unilateral role of a prosecutor in the nonadversary context of grand jury proceedings. The court stated:

" 'The duty of the district attorney is not merely that of an advocate. His duty is not to obtain convictions, but to fully and fairly present to the court the evidence material to the charge upon which the defendant stands trial . . . .' (*In re Ferguson* (1971) 5 Cal.3d 525, 531.) At trial—where the adversary system operates—the district attorney may discharge his duty by disclosing to the defendant the substantial material evidence favorable to him. (*People* v. *Ruthford* (1975) 14 Cal.3d 399.) The district attorney is not obligated to present such evidence at trial himself because it is defense counsel's duty to do so. (See *People* v. *Kiihoa* (1960) 53 Cal.2d 748, 752.)

"However, the adversary system does not extend to grand jury proceedings. As has been explained, if the district attorney does not bring exculpatory evidence to the attention of the grand jury, the jury is unlikely to learn of it. We hold, therefore, that when a district attorney seeking an indictment is aware of evidence reasonably tending to negate guilt, he is obligated under section 939.7 to inform the grand jury of its nature and existence, so that the grand jury may exercise its power under the statute to order the evidence produced." (*Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at p. 255 [parallel citations omitted].)

The decisions cited in this language (*People* v. *Ruthford, supra,* 14 Cal.3d 399; *In re Ferguson, supra,* 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234]) shed some light on the question whether the *Johnson* reasoning should be applied where a district attorney fails to disclose to a grand jury information other than "evidence reasonably tending to negate guilt" of the *crime* for which an indictment is sought. In *Ruthford,* the Supreme Court held that prosecutorial suppression of "material evidence bearing on the credibility of a key prosecution witness," at trial, is a denial of due process requiring reversal of a conviction unless it is shown to have been "harmless beyond a reasonable doubt." (*People* v. *Ruthford, supra,* at pp. 408-409.) The holding was based on a review of *Ferguson* and parallel decisions (*id.,* at pp. 405-406) from which the court concluded: "We recognize the foregoing cases as establishing a duty on the part of the prosecution, even in the absence of a request therefor, to disclose all substantial material evidence *favorable to an accused,* whether such evidence relates directly to the question of guilt, to matters relevant to punishment, or to the credibility of a material witness." (*Id.,* at p. 406 [original italics].)

■ · The significance of the last-quoted passage is in the Supreme Court's corollary recognition that "evidence favorable to an accused" may relate to "matters relevant to punishment." It thus includes any evidence that may prompt a grand jury to refrain from making an allegation of special circumstances in a murder indictment where it would be totally and exclusively "relevant to punishment." The evidence of Sandra's statements which Blasingame communicated to Officer Hoke, but not to the grand jury, met this definition because it supported the inference that Sandra was not kidnaped on April 7. (See fn. 5, *ante.*) It was therefore "evidence favorable to the accused," within the meaning of *Johnson,* for purposes of the grand jury proceedings which resulted in petitioner's indictment. (See *Johnson* v. *Superior Court* as last quoted *supra,* 15 Cal.3d 248 at p. 255.) Pursuant to *Johnson,* its nondisclosure in those proceedings voids the special-circumstance allegation of the "commission of a kidnaping" which the grand jury made without having heard all the material evidence on that subject.

This result is also commanded by our decision in a companion case filed this date. (*Ghent* v. *Superior Court* (1979) *ante,* p. 944 et seq. [153 Cal.Rptr. 720].) We held there that allegations of special circumstances, made in an accusatory pleading charging murder, may be challenged by a pretrial motion made pursuant to section 995 and grounded on the insufficiency of the preaccusatory evidence to support them. (*Id.,* at p. 952

et seq.) The holding was based in part upon the stark distinction between the totality of the death penalty and the mere "additional punishment" which may result from proof of conventional "enhancement" allegations made in an accusatory pleading charging a crime other than murder. (*Id.,* at p. 953.) We also pointed out that the unique practical consequences of allegations of special circumstances are so substantial that the People, as well as the accused, have a vital interest in the assurance that they are made on firm and considered evidence. (*Id.,* at p. 954.) These considerations support our conclusion that *Johnson* relief lies against the special-circumstance allegation challenged here.

■ The Attorney General has argued that order No. 2 is not reviewable in this proceeding because allegations of special circumstances are not subject to challenge on a pretrial motion addressed to an accusatory pleading pursuant to section 995. The oral motion denied by order No. 2 was not expressly made pursuant to section 995 (see fn. 4, *ante*), and the extraordinary relief granted in *Johnson* was not conditioned upon any procedural requirements. (See *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at p. 251.) If the oral motion is deemed a section 995 motion by reason of its context however, that fact makes no difference: the stakes attending the death penalty are such that the right to *Johnson* relief from an allegation of special circumstances may be claimed on a section 995 motion and granted upon pretrial appellate review of an order denying it. (Cf. *Ghent* v. *Superior Court, supra, ante,* at p. 944.)

*Johnson* operates to void the special-circumstance allegation relative to the "commission of a kidnaping," but not the indictment for murder. Relief from the allegation should accordingly be granted by way of mandate addressed to the allegation alone. (Compare *Johnson* v. *Superior Court, supra,* 15 Cal.3d 248 at p. 251.) It should also be granted without prejudice to reinstatement of the allegation in appropriate proceedings at which all the material evidence relevant to punishment will be disclosed and subject to review. (See *id.,* at p. 255.) Against that prospect, we may properly note here that we have seen no evidence supporting the inference that a kidnaping was committed for "ransom" or "reward," or for any other of the remunerative purposes specified in section 209. (See its text as quoted in fn. 3, *ante.* See also fn. 5.) A special-circumstance allegation of the commission of a kidnaping "in violation of section 209" will accordingly require the production of evidence not shown in this record.

*The Order Denying the Section*
*1538.5 Motion (Order No. 3)*

■ We have seen that petitioner made this motion for an order suppressing the evidence found in his automobile when Officer Hayter searched it on April 11, pursuant to the search warrant he had obtained on his affidavit, upon the ground that the information withheld from the grand jury had also been omitted from the affidavit.

Officer Hayter executed the affidavit on April 10. It did not refer to the more detailed account of the April 7 episode which Blasingame had given to Officer Hoke on April 9 (quoted in fn. 5, *ante*), nor to Blasingame's past involvement with narcotics. It nevertheless recited a version of the episode Blasingame had given Officer Hayter himself, and of a corroborating account given by Ellen Adams, on April 8 and 9. Both versions corresponded with the one Blasingame gave in his later testimony to the grand jury.

The affidavit also reported comprehensive details of the police investigation of Sandra's disappearance and death, and the circumstances which led to petitioner's arrest and the seizure of his automobile on the early morning of April 9. Officer Hayter identified the various sources from whom he had received this information, directly or through channels. They included at least 10 persons other than Blasingame, none of whom had police records.

Officer Hayter also alleged in the affidavit his personal observation of "dirt and grass" at the roadside location where Sandra's body had been found, and that he had seen "fresh dirt and grass" on the front seat floor of petitioner's automobile from the "outside" of the vehicle and "without entering it." The sum of the information reported in the affidavit need not otherwise be detailed here. We suffice to state that, without reference to Blasingame as a source, it unmistakably added up to probable cause for a search of the automobile for evidence of the commission of a murder or a kidnaping (or both).

In order No. 3, respondent court found that "[t]here was no intentional factual omission in the affidavit" and concluded that it showed "probable cause to issue the search warrant" in any event. At the hearing on the section 1538.5 motion, Officer Hayter testified that he had not learned of the allegedly omitted information until it was communicated to him after he had executed the affidavit on April 10 and the warrant on April 11.

The evidence thus supports respondent court's finding that no factual omission in the affidavit had been "intentional." The court's conjunctive conclusion was accurate in its analysis of the affidavit under the controlling law. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234]; *Morris* v. *Superior Court* (1976) 57 Cal.App.3d 521, 526 [129 Cal.Rptr. 238].) Order No. 3 is consequently correct, and petitioner is not entitled to relief from it.

The writ ordered below will issue without prejudice to the reinstatement, consistent with this opinion, of the allegation reached by it.

A peremptory writ of mandate will issue commanding respondent court (1) to vacate its order denying the motion addressed to the allegation in the indictment that the murder charged "was personally committed by defendant during the commission . . . of a kidnaping in violation of Sections 207 and 209 of the Penal Code" and (2) to make an order striking the allegation from the indictment. The petition is otherwise denied. The alternative writ of mandate is discharged.

Caldecott, P. J., and Christian, J., concurred.

On April 19, 1979, the opinion was modified to read as printed above.