Filed 1/29/16  P. v Gastineau CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NATHAN JAMES GASTINEAU,<br><br>Defendant and Appellant. | D068477<br><br><br><br>(Super. Ct. No. FSB1102626) |

APPEAL from a judgment of the Superior Court of San Bernardino County, William J. Powell IV, Judge.  Affirmed.

Blumenthal Law Offices and Brent F. Romney for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric a Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Nathan Gastineau befriended the victim, Jane Doe (Doe), when she was 15 years old.  He admitted having sex with her on one occasion a few months after she turned 16, but denied initiating any other inappropriate sexual contact with her prior to

her 16th birthday. In contrast, Doe testified they had begun having sexual encounters starting when she was 15 and that conduct occurred on numerous occasions. The jury convicted Gastineau of six counts of committing a lewd act on a child (Pen. Code, § 288, subd. (c)(1)),[1] 10 counts of unlawful sexual intercourse (§ 261.5, subd. (c)), and one count of possessing matter depicting a child engaging in sexual conduct (§ 311.11, subd. (a)). The court sentenced Gastineau to a total prison term of 13 years 8 months.

Gastineau argues the court erred by (1) permitting the prosecution to amend the information to allege additional counts, (2) denying him a continuance to locate evidence, (3) excluding certain testimony, (4) admitting evidence of Doe's "fresh complaints," and (5) sentencing him to the maximum allowable term.

FACTS

A. Prosecution Case

*Doe's Testimony*

In mid-2010, Doe was 15 years old when she applied for, and was accepted into, the "Explorer" program with the San Bernardino Sheriff's Department, a program allowing teens interested in law enforcement careers to attend a training program and accompany officers on "ride alongs." Gastineau was an advisor to the program.

In the summer of 2010, after completing her training program, Doe began going on "ride alongs" once a week. On most "ride alongs," she went with Gastineau. In August or September, Gastineau invited her to join his "Ghostbusters" group, a group that

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

dressed up and provided entertainment at Halloween parties and other events. Ghostbusters events were held once a week, in addition to one or two weekly meetings for the Ghostbusters, and Doe also attended the weekly Explorer meetings. Gastineau normally picked her up from home for Ghostbusters meetings and events and dropped her at home afterwards.

In late September or early October, Gastineau made his first overture to Doe. He picked her up in his car and, while in his car, he held her hand and said it was too bad she was only 15 because she was his type and he liked her. The first sexual encounter, which occurred around mid-October 2010, arose when Gastineau brought Doe to his apartment before a Ghostbusters or Explorer event. He began kissing her and then undressed her. They orally copulated each other and had intercourse for the first time. They had sex again about a week later and continued having sex about once a week until April 2011. It always took place in Gastineau's apartment when his girlfriend, Ms. Ruiz, was at work, and it usually happened on weekends and in connection with a Ghostbusters or Explorer event.[2]

Gastineau had sex with Doe at least four times in November 2010, when she was still 15 years old. During this time frame, Gastineau took several photographs of them as they engaged in intercourse. Doe identified the photographs at trial that Gastineau had

---

[2] When the sexual relationship began, Doe was confused, but over time she developed feelings for Gastineau. He eventually began telling her he loved her and wanted to marry her when she turned 18.

3

taken depicting Gastineau and her engaged in intercourse.[3]  Around the same time period, Gastineau also videotaped himself and Doe as they were engaged in intercourse, and he may have videotaped them on a second occasion.  They also had sex at least four times in December 2010, and three or four times in January 2011.  They had sex at least 11 times before her 16th birthday in late January 2011, and another approximately 11 times after her 16th birthday.

*Third Party Testimony*

Steven Dent was best friends with Doe during this period.  In October 2010, Doe told Dent she was dating someone significantly older than she, and the man was in his 30's.  A couple of weeks later, she told Dent the man was her Explorer advisor, "Nathan," and that Nathan was her boyfriend.  In early November she told Dent she was having sex with her Explorer advisor.  At some point she also showed Dent some text messages she exchanged with Gastineau.  She also told Dent that Gastineau had taken naked photographs of her and, in early January, showed Dent one of those pictures.

On April 18, 2011, Doe told Mr. Veasley (another adult member of the Ghostbusters group) she had been having sex with Gastineau and that it had begun the

---

[3]     Although Doe could not recall at trial the precise dates in November 2010 that she had sex with Gastineau, she told Detective Brumm (during an April 25, 2011, interview) that Gastineau had sex with her twice on the Saturday before Thanksgiving in 2010.  The date of that Saturday was November 20, 2010.  Police seized his computer and found 27 photographs of Gastineau and Doe engaged in intercourse, 22 of which contained a digital "time and date stamp" (placed onto the photographs at the time the camera took them) that *matched* the November 20, 2010, date Doe described to Detective Brumm.  The other five photographs bore a digital time and date stamp of November 23, 2010.

4

previous October. Veasley, who was Gastineau's friend, confronted him two days later and Gastineau admitted he had sex with Doe, but did not say how many times.

On April 22, 2011, an administrator at Doe's school (Mr. Filson) saw Doe and another student approach a San Bernardino County Sheriff's patrol car during the lunch period, and the driver gave Doe a bag of food from a fast food restaurant. Filson, based on that observation and other information, was concerned Doe may have been involved in an inappropriate relationship with the driver and contacted the sheriff's department. Investigators were dispatched to the school that day, and Gastineau was arrested later that day. During Doe's first interview that afternoon, she initially denied any inappropriate relationship. However, as the interview progressed, she told the officer they had "kissed . . . [but] nothing else." By the end of the interview, Doe tearfully stated they had sex approximately five times. When Doe was interviewed three days later, she revealed a much more extensive relationship, telling the officer they began having sex in November 2010 "[a]bout once a week" until she turned 16, and after that sex occurred at least twice a week through the time of Gastineau's arrest.

Police searched Gastineau's apartment and found an Olympus digital camera, model number FE-370 and a LaCie hard drive. A forensic examination of the hard drive found 27 photographs of sex acts between Gastineau and Doe. The "footprint" left on the photographs by the camera showed they were taken with an Olympus digital camera, model number FE-370, and 22 of the photographs contained a digital "time and date stamp" of November 20, 2010, and the other five photographs bore a digital time and date

5

stamp of November 23, 2010.  There was also a video on the hard drive of Gastineau having sex with Doe.[4]

When Gastineau was arrested, he told police they might find the photographs and video on his computer, but claimed he had sex with Doe on only one occasion.  However, he later told police Doe had twice performed oral sex on him, the first of which was in December or January.

*Defense Case*

Ms. Ruiz, Gastineau's girlfriend at the time, never saw any conduct between Gastineau and Doe that caused her concern.  She attended all the Ghostbusters events in October 2010, and Doe rode with Ruiz to and from those events.  There were no Ghostbusters events in November, and on November 20, Gastineau went to Disneyland with a friend when Ruiz was unable to leave work.

Gastineau testified he and Ruiz reconstructed a four-page calendar for the period October 2010 through May 2011 to assist his defense.  Doe attended an October 22, 2010, Ghostbusters event at Disneyland but was driven to and from the event by Kyle Layvas.  Doe also attended four other Ghostbusters events in October 2010 but Gastineau did not drive her to or from those events without Ms. Ruiz being present.  There were no Ghostbusters events in November 2010.  A similar pattern occurred for the events Doe

---

[4]    Although the "file created date" on the hard drive was March 7, 2011, the expert explained it could not be determined when the video was actually taken, because the video camera did not leave a time and date footprint on the video, and the March 7 date could have been when the video was taken or could have been when the video was transferred to the hard drive.

attended in December 2010. There were no Ghostbusters events in January 2011 and, for the Ghostbusters events in February 2011 attended by Doe, Gastineau never picked her up or returned her home without accompaniment.

Gastineau testified about a February 2011 incident in which Doe tried to perform oral copulation on him in the car but that he had stopped her. He admitted, however, that he told investigators Doe twice performed oral sex on him, the first of which was in December or January. He admitted to taking the photographs and video, but that all of these occurred during their one sexual encounter at his apartment during which they had intercourse on March 5, 2011.[5] The encounter resulted when Gastineau, when driving Doe to an event, realized he had forgotten some things and was forced to return to his apartment. Gastineau went inside, accompanied by Doe, and went into his bedroom as Doe waited in the living room. When he emerged, she was masturbating on the couch and, when he scolded her, she reacted by straddling him and kissing him. They then moved to the bedroom and had intercourse. They took photographs of the encounter and then, because the video camera was already set up in the bedroom, they decided also to video the encounter.

---

[5]   He claimed the dates imprinted on the photographs were inaccurate because he had an old computer and had to manually change the dates on his computer whenever he loaded photographs onto his computer.

II

THE AMENDMENT OF THE INFORMATION CLAIM

During trial, the prosecution sought and obtained leave to file an amended information that narrowed the time frame within which the alleged misconduct occurred but expanded the number of counts alleged against Gastineau. On appeal, Gastineau asserts the trial court abused its discretion in allowing the amendment because his due process rights to notice and an opportunity to prepare a defense were impinged by requiring him to defend against multiple "generically" alleged offenses based on "generic" testimony. He also alleges the multiple charges created a "serious risk of arbitrary and disproportionate sentencing" and impinged on his right to a unanimous verdict.

A. Procedural Background

At the preliminary examination, the detective who interviewed Doe testified she told the detective Gastineau had sexual intercourse with her six times between November 2010 and her 16th birthday in late January 2011. Doe told the detective that, after her birthday, they continued having intercourse (through early April 2011) approximately twice a week, or approximately 20 times. Doe also told the detective Gastineau had taken photographs and a video of them having sex and showed those to Doe, and another detective testified at the preliminary hearing that Gastineau admitted having photographs and a video on his computer of Doe engaged with him in sexual acts.

After the preliminary hearing, the prosecution filed an information alleging five counts of violating section 288, subdivision (c)(1) (criminalizing sexual conduct

8

involving a victim aged 14 or 15 when the perpetrator was more than 10 years older than the victim) between June 1, 2010, and the day before Doe's 16th birthday, and five counts of violating section 261.5, subdivision (c) (criminalizing sexual intercourse with minors by a person more than three years older than the victim) between Doe's 16th birthday and April 25, 2011. However, during trial and shortly before the close of the prosecution's case in chief, the prosecutor requested leave to amend the information to charge Gastineau with six counts of violating section 288, subdivision (c)(1) between October 1, 2010, and the day before Doe's 16th birthday, and 10 counts of violating section 261.5, subdivision (c) between Doe's 16th birthday and April 22, 2011, and one count of violating section 311.11, subdivision (a) (criminalizing possession of matter depicting a minor engaged in sexual conduct).

The defense objected to the amended information, arguing it prejudiced its ability to prepare a defense, and alternatively asserting that, should the new information be permitted, the defense should be given a continuance to prepare for the new counts. The court, noting Gastineau had five days to investigate and consider what additional steps would be required by the amended information, concluded the People were entitled to file the amended information and Gastineau had not shown good cause for a continuance.[6]

---

6    The court repeatedly asked defense counsel what specific additional steps or avenues (not already presented by the prior information) had been raised by the new information necessitating a continuance, and provided defense counsel with an in camera hearing to offer an explanation of what additional steps it perceived were required by the amended information. The court concluded, after hearing defense counsel's arguments, that the defense had not articulated good cause for a continuance, but also advised that if defense counsel could subsequently articulate a specific additional avenue of

9

B. Applicable Law

Gastineau argues his due process rights were abridged because Doe gave only "generic" testimony as to the molestations (because she was unable to give details as to the time, place, and circumstances of each of the charged offenses) and therefore permitting amendment to the information was error. Because Gastineau's argument appears to conflate two distinct issues—the propriety of "generic" testimony and the propriety of an amendment to an information—we outline the law on both subjects.

Our Supreme Court, addressing the so-called "generic testimony" problem, has recognized that child molestation cases present "difficult questions regarding the extent to which the defendant's due process rights are implicated by the inability of his young accuser to give specific details regarding the time, place and circumstances of various alleged assaults." (*People v. Jones* (1990) 51 Cal.3d 294, 299 (*Jones*).) *Jones* distilled that "[i]n many child molestation cases, two specific due process rights are invoked, namely, the right to prepare and present a defense, and the right to a unanimous jury. . . . [¶] . . . [¶] The 'preeminent' due process principle is that one accused of a crime must be 'informed of the nature and cause of the accusation.' [Citation.] Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. [Citation.] [¶] Thus, the right to defend has two related components,

investigation required by the amended information that necessitated a continuance, the defense could again raise the issue and the court would reconsider the request.

10

namely, the right to *notice* of the charges, and the right to *present a defense* to those charges." (*Jones,* at pp. 316-317.)

The distinct issue raised here by Gastineau—the permissibility of amendments to the accusatory pleading—is governed by well settled authority. In California, "the statutory scheme . . . plainly reflects that no crime . . . can be included in an information unless it has been supported by a showing of probable cause at the preliminary hearing." (*Griffith v. Superior Court* (2011) 196 Cal.App.4th 943, 954.) However, when the evidence at the preliminary hearing *does* provide probable cause for the charged offenses:

> "[O]ur Supreme Court has interpreted sections 739 and 1009 to ' "permit amendment of the information to add charges or enhancements which are supported by the actual evidence at the preliminary hearing, provided the facts show due notice by proof to the accused." [Citations.]' [Quoting *People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 764.] 'Under section 739, "the law is settled that unless the magistrate makes factual findings to the contrary, the prosecution may amend the information after the preliminary hearing to charge any offense shown by the evidence adduced at the preliminary hearing provided the new crime is transactionally related to the crimes for which the defendant has previously been held to answer." [Citations.] "Under the case law interpreting section 1009, the test applied is whether or not the amendment changes the offense charged to one not shown by the evidence taken at the preliminary examination. [Citation.]" [Citation.] As long as the above standards are met, there is no bar to adding to the information enhancement allegations that were not charged in the complaint.' [Quoting *Mendella, supra*, 33 Cal.3d at p. 764.]" (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1531.)

Under section 1009, an information may be amended "at any stage of the proceedings" and provides that the trial "shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends

11

of justice require, may be granted. . . ."  As long as the information is not amended to change the offenses charged to ones *not* shown by the evidence taken at the preliminary examination (*People v. McCoy, supra,* 215 Cal.App.4th 1510), an information may be amended up to the close of the trial if no prejudice is shown.  (*People v. De Georgio* (1960) 185 Cal.App.2d 413, 421.)  Whether to allow the amendment is within the trial court's discretion (*People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1581), and it is the defendant's burden to show permitting the amendment was an abuse of discretion. (*People v. Wimberly* (1992) 5 Cal.App.4th 773, 795 [impairment of ability to defend against new charges shows abuse of discretion in allowing amendment].)

C. Analysis

Gastineau has not shown that permitting an amendment to the information was an abuse of discretion.  The six counts of violating section 288, subdivision (c)(1), between October 1, 2010, and the day before Doe's 16th birthday was supported by the detective's testimony at the preliminary hearing that Doe told the detective Gastineau had sexual intercourse with Doe six times between November 2010 and her 16th birthday.  The 10 counts of violating section 261.5, subdivision (c), between Doe's 16th birthday and April 22, 2011, was supported by the detective's testimony at the preliminary hearing that Doe told the detective that, after her 16th birthday, they continued having intercourse (through early April, 2011) approximately twice a week, or about 20 times.  The one count of violating section 311.11, subdivision (a), was supported by a different detective's testimony at the preliminary hearing that Gastineau admitted having photographs and a video on his computer of Doe engaged in sexual acts.  Because Gastineau does not claim

12

the amended information changed the offenses charged to ones not shown by the evidence taken at the preliminary examination (*People v. McCoy, supra,* 215 Cal.App.4th at p. 1531), and he has not demonstrated how the amendment impaired his ability to defend against those charges, we cannot conclude the trial court abused its discretion by permitting the amendment.

Gastineau principally complains that his defense was impaired because Doe's testimony did not have specificity as to the times, dates and locations of the six sexual encounters (between Oct. 1, 2010, and the day before Doe's 16th birthday) charged in counts 1 through 6, or the numerous sexual encounters (between Doe's 16th birthday and April 22, 2011) that formed the basis for the charges contained in counts 7 through 16, and this absence of specificity created difficulties for his efforts to establish alibis or other defenses to the charges. However, those same difficulties were present *regardless of the amendment*, and is instead a difficulty *Jones* recognized was inherent when a defendant is charged with multiple child molestations occurring over a lengthy time period. Gastineau's claims on appeal are the precise claims resolved adversely to his arguments by *Jones*. Gastineau's argument that the generic testimony of a victim describing multiple sexual assaults over a lengthy time frame deprives a defendant of his due process rights was rejected when the *Jones* court examined these arguments in depth and "conclude[d] that, given the availability of the preliminary hearing, demurrer and pretrial discovery procedures, the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a defendant's due process right to fair notice of the charges against him" (*Jones, supra*, 51 Cal.3d at p. 318) and then

13

stated it would "decline to follow the thesis of [*People v. Van Hoek* (1988) 200 Cal.App.3d 811] and its progeny that generic testimony deprives the defendant of a due process right to defend against the charges against him." (*Id.* at pp. 320-321.)

Similarly, Gastineau's argument—that the generic testimony of a victim describing multiple sexual assaults over a lengthy time frame potentially infringes on his right to a unanimous verdict—was also rejected by *Jones*. *Jones* carefully considered and "reject[ed] the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described." (*Jones, supra,* 51 Cal.3d at p. 321.) Finally, Gastineau asserts, without citation to authority, that generic testimony raises the specter of arbitrariness in charging and sentencing. However, when the testimony of the victim (albeit generic) provides substantial evidentiary support for multiple convictions, as *Jones* acknowledged it could (*id.* at p. 322), Gastineau provides no argument for why it would be impermissibly "arbitrary" to charge the defendant with each offense for which there is substantial evidence and to punish the defendant for every separate offense he was found to have committed. We conclude Gastineau has not demonstrated that allowing the People to file an amended information during trial was either an abuse of discretion or deprived him of due process.

THE DENIAL OF THE CONTINUANCE CLAIMS

The prosecution's evidence was that the 27 photographs of sex acts between Gastineau and Doe found on Gastineau's hard drive contained digital "footprints" showing the photographs were taken with an Olympus digital camera, model number FE-370,[7] and were taken on November 20 and November 23, 2010.  Gastineau argues the court abused its discretion when it denied his request for a midtrial continuance to allow him time to locate a sales receipt that would show the Olympus FE-370 digital camera found by police when they searched his residence had been purchased in late December, 2010, in support of his claim the digital footprints showing the November 20 and November 23, 2010, dates were necessarily erroneous.

A. Background

Before calling Detective Swan, the prosecution's forensic expert, the prosecution showed to the defense Exhibit 17, which included the photographs, the "file created" dates of November 20 and November 23, 2010, the "Olympus Digital Camera . . . FE-370" information associated with each photograph, and other technical information. The defense objected it had not had sufficient time to "evaluate" that exhibit, and the court determined that Detective Swan could discuss the information but it was reserving ruling on the admissibility of the exhibit.  Detective Swan then testified he had examined a forensic copy of Gastineau's hard drive and found the photographs of sex acts between

_____

7      Police found an Olympus digital camera, model number FE-370, at Gastineau's residence.

Gastineau and Doe, and testified the digital "footprints" showed the photographs were taken with an Olympus digital camera, model number FE-370, and were taken on November 20 and November 23, 2010.  The prosecution showed Exhibit 17 to Detective Swan, and he explained that exhibit contained copies of the photographs he found on Gastineau's hard drive, along with the "file created" dates of November 20 and November 23, 2010, and the "Olympus Digital Camera . . . FE-370" information associated with each discrete photograph.  The defense complained that, although it had received copies of the photographs during discovery, the materials it received did not have "all that information" and the defense needed additional time to analyze it.  The court postponed further cross-examination of Detective Swan for six days.

When the issue was again addressed after the six-day hiatus, the court compared the information contained in Exhibit 17 with the information contained in the materials turned over to the defense during discovery, and concluded the information contained in Exhibit 17, which included the dates on which the photographs were taken and the camera used to take them, was information that "was known to both parties all along."[8]

Gastineau, who claimed the photographs could only have been taken during the only sexual encounter he had with Doe, which occurred in March 2011, claimed the dates

_____

[8]     Gastineau does not claim on appeal that the court's ruling admitting Exhibit 17 into evidence was erroneous, and he does not challenge on appeal the determination that the digital information appended to the 27 photographs (about the camera model and dates the photographs were taken) was known to both parties "all along."  Gastineau admitted (during cross-examination) he had known "since I reviewed the [photographs]" that the photographs bore dates of November 20 and November 23, 2010, "and he was "always aware that date was an issue in this case."

16

associated with those photographs were incorrect due to problems with his computer and with the camera, and this was a frequent problem he encountered with his other photographs. He also later testified the dates associated with those photographs had to be incorrect because the camera was a Christmas gift he received from his girlfriend (Ms. Ruiz) for Christmas in 2010. Ms. Ruiz was recalled by the defense to testify she had given Gastineau the blue Olympus digital camera, model number FE-370, which she had purchased at Costco using her ATM card, as a Christmas gift in 2010, but she conceded she had not brought any confirmatory documents with her to court. At the end of that court day, the defense indicated there was a witness with "[p]ossible records" concerning the Costco purchase that would be introduced the following day, and the court indicated it would evaluate that additional witness at that time.

The following day, the defense stated Ms. Ruiz's mother had heard her daughter's testimony and recalled she had accompanied Ms. Ruiz to the Costco and, because Ms. Ruiz did not have a Costco card, the mother had paid cash for the camera, but did not currently have a receipt evidencing that purchase. The defense asked for a one-day continuance to contact Costco to obtain a receipt verifying the purchase. The prosecution objected that "the camera has been the ultimate issue in this case . . . for three-and-a-half years" and that this new information was "extremely late discovery and unfair to [the prosecution]." The court denied the continuance because "this is something that should have been done years ago," and it would not grant a continuance to allow the defense to conduct "further investigation . . . to see if this latest story is true or not." The defense then asked for leave to call the mother to testify about the purchase, and the court

17

sustained the prosecution's objection to this proffered witness because the mother's testimony (1) would be cumulative and (2) would be "late discovery" as to an alleged "percipient witness to the most crucial issue in this case," thereby preventing the prosecution from "verify[ing] the veracity of this statement" or obtaining impeachment information as to this witness.

B. <u>Analysis</u>

Thirty days before trial, the defense must disclose the names and addresses of persons (other than the defendant) the defense intends to call as witnesses at trial, and any real evidence the defendant intends to offer in evidence at the trial. (§ 1054.3, subd. (a).) The purpose of the disclosure is "to promote ascertainment of truth by liberal discovery rules which allow parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial." (*People v. Jackson* (1993) 15 Cal.App.4th 1197, 1201.) Although late discovery may be excused on a showing of good cause (§ 1054.7), a court may exclude the testimony of a witness or the presentation of real evidence for noncompliance with the discovery statutes (*People v. Riggs* (2008) 44 Cal.4th 248, 305-306), and we will not disturb the court's ruling absent an abuse of discretion. (*People v. Lamb* (2006) 136 Cal.App.4th 575, 580-582.)

Gastineau has not shown the rulings denying a continuance and precluding the mother from testifying were an abuse of discretion. The prosecution's contention as to the dates of the photographs, and the camera with which they were taken, was provided to the defense during discovery and therefore was known to the defense "all along." At the last minute, the defense sought to produce previously undisclosed evidence

18

(information that Gastineau presumably knew "all along") as to the provenance of the camera, which would have required either a significant mid-trial continuance (to allow the prosecution to investigate to obtain impeachment information) or that the prosecution forgo challenging the claimed provenance. Under these circumstances, we cannot conclude that excluding this alleged evidence was an abuse of discretion.

IV

THE EVIDENCE CODE SECTION 782 CLAIMS

Gastineau asserts the trial court erroneously excluded evidence of Doe's sexual relationship with another person. He contends the evidence was relevant to impeach Doe's credibility, by showing she was a person willing to lie, and was therefore admissible. He also asserts that, even if it was proper initially to exclude that evidence, the prosecution "opened the door" to the evidence by its questions to Doe's father and by its cross-examination of Gastineau.

A. Background

Gastineau moved in camera under Evidence Code section 782 to admit evidence that Doe had sexual relations with a third person on two occasions in April 2011 and lied to her father, and later to police, to cover up these liaisons. Gastineau argued the evidence was relevant to impeach Doe's credibility by showing she was a person willing to lie.

The court found the evidence was inadmissible under Evidence Code section 782, and also ruled the evidence was inadmissible under Evidence Code section 352 because any probative value of the evidence was outweighed by the danger it might mislead the

19

jury into believing Doe's sexual proclivities, such as her willingness to consent to sexual activities, were relevant to the charges against Gastineau.

B. Legal Standards

"Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions.  A defendant may not introduce evidence of specific instances of the complaining witness's sexual conduct, for example, in order to prove consent by the complaining witness.  [Citation.]  Such evidence may be admissible, though, when offered to attack the credibility of the complaining witness and when presented in accordance with the following procedures under [Evidence Code] section 782: (1) the defendant submits a written motion 'stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness' [citation]; (2) the motion is accompanied by an affidavit, filed under seal, that contains the offer of proof [citation]; (3) '[i]f the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant' [citation]; and (4) if the court, following the hearing, finds that the evidence is relevant under Evidence Code section 780 and is not inadmissible under [Evidence Code] section 352, then it may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted."  (*People v Fontana* (2010) 49 Cal.4th 351, 362.)

20

"The trial court is vested with broad discretion to weigh a defendant's proffered evidence, prior to its submission to the jury, 'and to resolve the conflicting interests of the complaining witness and the defendant . . .' " and " 'need not even hold a hearing unless it first determines that the defendant's sworn offer of proof is sufficient.' " (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514, quoting *People v. Rioz* (1984) 161 Cal.App.3d 905, 916.) Before the defense may offer such evidence for purposes of attacking the victim's credibility, the trial court must hold the required hearing and then find "that the prejudicial and other effects enumerated in Evidence Code section 352 are substantially outweighed by the probative value of the impeaching evidence." (*People v. Chandler* (1997) 56 Cal.App.4th 703, 708.) A trial court's ruling on the admissibility of prior sexual conduct will be overturned on appeal only if the appellant can show an abuse of discretion. (*Id*. at p. 711.)

C. Analysis

We are unpersuaded the ruling, which excluded evidence the sole purpose of which was to attack Doe's credibility, was an abuse of the trial court's discretion. As the *Chandler* court noted, "[b]y narrowly exercising the discretion conferred upon the trial court in this screening process, California courts have not allowed the credibility exception in the rape shield statutes to result in an undermining of the legislative intent to limit public exposure of the victim's prior sexual history. [Citations.] Thus, the credibility exception has been utilized sparingly, most often in cases where the victim's prior sexual history is one of prostitution." (*People v. Chandler, supra,* 56 Cal.App.4th at p. 690.) Certainly, the proffered evidence was not of the kind *Chandler* noted is most

21

often found admissible under the strictures of Evidence Code section 782. Moreover, although Doe's disavowal about those sexual encounters to her father and to police to cover up those encounters may have had some impeachment value, it was largely *cumulative* to the nearly identical type of behaviors Doe engaged in when she initially attempted to cover up her sexual encounters with Gastineau: she gave false accounts to her father about being engaged in innocent activities to cover her sexual encounters with Gastineau, and she also initially lied to police about their sexual relationship before finally admitting to its full nature and extent. Thus, the trial court may well have concluded the fact she *also* engaged in similar behavior regarding another liaison was so cumulative that its admission "would not have had a significant impact on defendant's defense or on the jury's impression of [the victim's] credibility" (*People v. Bautista* (2008) 163 Cal.App.4th 762, 783), and therefore the trial court's conclusion (the significant prejudicial impact of that evidence, which Evidence Code section 782 is designed to prevent, outweighed the probative value of that evidence) was not an abuse of discretion. (*Bautista,* at pp. 782-783.)

Gastineau alternatively argues that the prosecutor's direct examination of Doe's father, and the prosecutor's cross-examination of Gastineau, "opened the door" to inquiry about Doe's sexual relations with the third person by the defense. We reject this claim. The prosecutor asked Doe's father during direct examination about whether the father was concerned about the many late nights that Doe spent in Gastineau's company for Explorer events, and the father answered "[n]o, not until later—further up into the whole thing is when I started having a problem with [Gastineau] and another person." We disagree that

22

his brief comment, which only indirectly and generically mentioned a third person (and was not even directly responsive to the prosecutor's question), was sufficient to permit the defense to conduct a wide ranging inquiry into the matters previously—and correctly—ruled inadmissible under Evidence Code sections 782 and 352.

We are equally unpersuaded the prosecutor's cross-examination of Gastineau "opened the door" to a wide ranging inquiry into Doe's sexual relations with the third person. After Gastineau had reiterated his claim that (apart from two occasions when Doe performed oral sex on Gastineau in the car) they only had sexual relations on the one occasion in March 2011, the prosecutor showed Gastineau an exhibit depicting a series of text messages between Gastineau and Doe on the morning of Friday, April 22, 2011, which apparently discussed their plan for their sexual rendezvous scheduled for the next day. In the text exchange, after Doe said "i need to see u" and Gastineau reassured her that, "Tomorrow is almost here . . . we're gonna make it" (and also assured her that "I remember when I first saw you. I remember how I felt. Nothing has changed . . . just got stronger"), Doe replied "I love you sooo much u have no idea. I wanna be with u." Gastineau immediately replied, "Don't hold back with me Saturday," and Doe assured Gastineau "I won't. I want you to hold me" and "[w]ill u hold me baby?" and Gastineau replied, "Yes . . . for a long long time."[9] When the prosecutor used those messages to undermine Gastineau's testimony that (even after their one and only sexual encounter in his apartment) he had no feelings for Doe except as a good friend, the prosecutor (after

---

[9]     A short time later, Doe again texted Gastineau and stated "I wana kiss u babe," and he replied, "What else babe," and she answered, "Everything. I wana make love to you."

23

noting Gastineau had assured Doe that Saturday was "almost here") asked Gastineau what he meant by his statements urging Doe to not "hold back with me Saturday," and Gastineau answered "I had just found out about something that happened between [Doe] and someone else," and denied he was referring to Gastineau and Doe having sex on Saturday, even though Doe (in reply to his urging "Don't hold back") promised " I won't. I want you to hold me."

The defense argued below that the prosecutor, by asking what Gastineau meant by his statements urging Doe to not "hold back with me Saturday," opened the door for Gastineau to explain what he meant by that statement. Specifically, the defense argued that he should be entitled to testify that he had just learned of Doe's sexual encounters with the third person to fully explicate Gastineau's state of mind when he made that statement. The court refused to allow that testimony and Gastineau claims on appeal this continued refusal to allow the evidence was error considering the prosecution's "opening the door." We disagree. Gastineau *denied* the statement referred to having sex and *was* allowed to state that he was referring to having "just found out about something that happened between [Doe] and someone else." Although Gastineau claims he should have been allowed to *also* introduce the *particulars* of the "something that happened," notwithstanding the strong policies embodied in Evidence Code section 782, we cannot conclude the court abused its discretion in declining Gastineau's effort to conduct an "end-run" around the statutory protections. (Cf. *People v. Bautista, supra,* 163 Cal.App.4th at p. 783 [where defendant permitted to show witness was biased against defendant, the exclusion of evidence under Evidence Code section 782 of the *details* of

24

what gave rise to bias was proper because "[t]he details of the [sexual] relationship . . .

are at best tangentially related to [the witness's] feelings toward defendant and to any bias

or motive to lie"].)

V

THE "FRESH COMPLAINT" EVIDENCE CLAIMS

Gastineau argues the court abused its discretion when it allowed four witnesses—

Mr. Dent, Ms. Hernandez, Mr. Veasley, and Detective Brumm—to testify about

statements made by Doe to them under the rubric of the so-called "fresh complaint"

exception to the hearsay rule. After outlining the applicable law, we examine serially

each claim of error.

A. Applicable Law

In *People v. Brown* (1994) 8 Cal.4th 746 (*Brown*), our Supreme Court explained

that admitting evidence of extrajudicial statements made by the victim of a sexual offense

in reporting the alleged crime is, "in most instances, properly admissible at trial under

generally applicable evidentiary standards." (*Id.* at p. 749.) *Brown* then explained:

> "[P]roof of an extrajudicial complaint, made by the victim of a
> sexual offense, disclosing the alleged assault, may be admissible for
> a limited, nonhearsay purpose—namely, to establish the fact of, and
> the circumstances surrounding, the victim's disclosure of the assault
> to others—whenever the fact that the disclosure was made and the
> circumstances under which it was made are relevant to the trier of
> fact's determination as to whether the offense occurred. Under such
> generally applicable evidentiary rules, the timing of a complaint
> (e.g., whether it was made promptly after the incident or, rather, at a
> later date) and the circumstances under which it was made (e.g.,
> whether it was volunteered spontaneously or, instead, was made only
> in response to the inquiry of another person) are not necessarily
> determinative of the admissibility of evidence of the complaint.

25

> Thus, the 'freshness' of a complaint, and the 'volunteered' nature of the complaint, should not be viewed as essential prerequisites to the admissibility of such evidence." (*Id.* at pp. 749-750.)

Evidence admitted under the fresh complaint rules may be considered by the jury "for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime." (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522.) As *Brown* explained, evidence of a "fresh complaint" can be relevant because "the circumstances under which the complaint was made may aid the jury in determining whether the alleged offense occurred." (*Brown, supra*, 8 Cal.4th at p. 761.) *Brown* held that "[s]o long as the evidence that is admitted is carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose, admission of such relevant evidence should assist in enlightening the jury without improperly prejudicing the defendant." (*Id.* at p. 762.)

Because fresh complaint evidence is therefore admitted for limited purposes, "[o]n request, the trial court must instruct the jury as to the limited purpose for which the fresh complaint evidence was admitted. [Citation.] However, the trial court has no duty to give such an instruction in the absence of a request." (*People v. Manning* (2008) 165 Cal.App.4th 870, 880.)

B. Analysis

*Dent's Testimony*

The prosecution moved in limine to allow Mr. Dent to testify that (1) in December 2010 Doe told Dent she had a boyfriend older than 18 years old, (2) in January 2011 Doe

26

showed Dent a text message she claimed was from her boyfriend and Gastineau's name was on the display, (3) around the same time she told Dent she was dating a Sheriff's Deputy, (4) she told Dent she and Gastineau had engaged in several rounds of intercourse, (5) she showed Dent a nude picture of herself she claimed Gastineau had taken and told Dent Gastineau had taken a video recording of them engaged in sex. The court allowed the evidence, over the defense objection that it could only be admitted for nonhearsay purposes and should be limited to the fact of the disclosure and the basic circumstances surrounding the disclosure; and the court agreed to give a limiting instruction explaining Doe's statements would be admitted only to show the disclosures were made and not for proof of the truth of the statements.

When the prosecutor began asking Dent about Doe's various statements to him, the defense renewed its objection and the court gave a limiting instruction to the jury, stating:

> "[T]here is something that is called a fresh complaint. In other words, if someone describes a physical act or something that happened to them, it is not necessarily given to the jury for the truth that it actually happened, but to note that a complaint or a discussion actually happened so as to forestall any speculation as to why it didn't happen sooner, how come she didn't talk about it earlier, that sort of thing. That is why it is being admitted, not for the truth of the statement contained in itself."

Dent then testified Doe told him she had a boyfriend "way older than she was," that she told Dent sometime in December it was "her Explorer advisor" and his name was Nathan, it was a "[b]oyfriend/girlfriend" relationship and they were having sex, and that it was an ongoing sexual relationship, and she had shown Dent a nude picture of herself that she said had been taken by Gastineau.

27

Gastineau argues Dent's testimony went beyond the confines of proper "fresh complaint" evidence because Dent testified about additional details, such as why Dent had inferred the "Explorer advisor" referred to by Doe was in fact Gastineau, Dent had informed a teacher (Ms. Hernandez) about his concern Doe was engaged in an inappropriate relationship, and Dent saw Gastineau pick Doe up from school during the relevant time frame.[10] Although this testimony may have been inadmissible under the "fresh complaint" principles, Gastineau cites no authority suggesting such testimony as to these additional "details" was not otherwise admissible, and we therefore reject his claims the trial court erroneously admitted this evidence. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [appellate brief must contain legal argument with citation of authorities on the points made and " ' "[i]f none is furnished on a particular point, the court may treat it as waived, and pass it without consideration" ' "].)

*Hernandez's Testimony*

Gastineau appears to argue that Hernandez's testimony, during which she testified that in late October 2010 Dent told Hernandez that Doe might be involved in an

_____

10 Gastineau's brief *also* appears to imply the limiting instruction was inadequate because it did not expressly tell the jury it was *prohibited* from considering the evidence for the truth of Doe statements. However, because the instruction did tell the jury Doe's statements were not being admitted "for the truth that it actually happened" and "not for the truth of the statement," but only to show "that a complaint . . . actually happened so as to forestall any speculation as to why it didn't happen sooner, how come she didn't talk about it earlier," the instruction adequately conveyed the purposes for "fresh complaint" evidence *Brown* explained was proper. (*Brown, supra*, 8 Cal.4th at pp. 749-750.) If Gastineau believed the instruction required further amplification, it was incumbent on him to proffer a more particularized instruction. (*People v. Bolin* (1998) 18 Cal.4th 297, 328 [where instruction correctly states the law, and defendant did not request clarification or amplification, issue is waived on appeal].)

inappropriate relationship with someone, was inadmissible under the fresh complaint principles outline in *Brown*. However, Gastineau concedes the defense did not interpose any objection to Hernandez's testimony. Accordingly, Gastineau may not now complain that Hernandez's testimony should have been excluded. (See *People v. Champion* (1995) 9 Cal.4th 879, 918 ["reviewing courts will not consider a challenge to the admissibility of evidence absent ' "a specific and timely objection in the trial court on the ground sought to be urged on appeal" ' "], disapproved on other grounds in *People v. Combs* (2004) 34 Cal.4th 821, 860; *People v. Eubanks* (2011) 53 Cal.4th 110, 142 [failure to raise objection at trial forfeits objection].)

*Veasley's Testimony*

Gastineau argues Mr. Veasley's testimony about Doe's statements to Veasley was improperly admitted because Veasley's testimony (1) exceeded the boundaries of admissible fresh complaint evidence because Veasley's testimony went "well beyond when the complaint was made or the circumstances in which it was made," and (2) was not prefaced by a limiting instruction to the jury. We reject Gastineau's latter claim for two reasons. First, he did not request the jury be reinstructed on the limited purpose for which the fresh complaint (about which Veasley testified) was admitted, and therefore any claim of error was waived. (Cf. *People v. Manning, supra,* 165 Cal.App.4th at p. 880 [trial court has no duty to give a limiting instruction absent request by defendant].) More importantly, when overruling the defense's hearsay objection to Veasley's testimony, the court stated the objection was "overruled . . . *this is another fresh complaint. It will only be admitted for that purpose.*" (Italics added.) We conclude that statement was sufficient

29

to alert the jury to the fact that the *same* rules earlier provided to the jury about fresh complaints, including the *same* limitations on such evidence, applied with equal force to Veasley's testimony.

We also reject Gastineau's principal claim, i.e. that Veasley's testimony exceeded the boundaries of admissible fresh complaint evidence by going beyond when the complaint was made or the circumstances in which it was made. Veasley testified only to what Doe disclosed to Veasley (she was involved in a sexual relationship with Gastineau that began approximately six months earlier), and the date and circumstances surrounding this disclosure. Gastineau's opening brief makes no effort to explain what testimony by Veasley comprised the "details" allegedly beyond the scope of proper fresh complaint evidence, and we therefore do not further consider this claim of alleged error. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 ["It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.] If no citation 'is furnished on a particular point, the court may treat it as waived.' "].)

*Detective Brumm's Testimony*

Gastineau finally asserts Detective Brumm's testimony, in which Brumm related portions of her conversations with Doe during Brumm's first and second interview of her, was improperly admitted. However, the record contains no suggestion Gastineau interposed any hearsay objection to Brumm's testimony, and therefore he may not complain on appeal that the court should have excluded that testimony. (See *People v. Champion, supra,* 9 Cal.4th at 918; *People v. Eubanks, supra,* 53 Cal.4th at p. 142.)

30

VI

THE SENTENCING CLAIM

Gastineau argues the court abused its discretion when it imposed the upper term for his conviction on count 1, thereby imposing the maximum sentence on Gastineau for his convictions.[11] He claims the court ignored all mitigating evidence, and instead focused solely on the factors in aggravation, and that approach was an abuse of discretion.

*Legal Framework*

When determining a sentence, the statutory preference is for imposition of the middle term (*People v. Avalos* (1984) 37 Cal.3d 216, 233), but the court may depart from that middle term and impose the upper term when it concludes the aggravating circumstances outweigh the mitigating circumstances. (*People v. Scott* (1994) 9 Cal.4th 331, 350 & fn. 13.) The trial court must specify the reasons for its sentencing decision, but need not "cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances." (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court "is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. [Citations.] The court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.' " (*Id*. at p. 848.) The existence of a

---

11      The court selected the conviction on count 1 to serve as the principal term, and imposed the upper term of three years on that conviction, and imposed consecutive eight-month terms (representing 1/3 the midterm) for all of the remaining convictions, for a total term of 13 years 8 months.

31

single aggravating circumstance is legally sufficient to warrant imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 813.)

The trial court is vested with broad discretion under the sentencing scheme, and its sentencing decision is subject to review for abuse of discretion. (*People v. Sandoval, supra,* 41 Cal.4th at p. 847.) In reviewing for abuse of discretion, two fundamental precepts guide our review of the sentencing determination: first, the burden is on the defendant to clearly show the sentencing decision was irrational or arbitrary, and second, a decision will not be reversed merely because reasonable people might disagree; the appellate court may not merely substitute its judgment for the judgment of the trial judge. (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

*Analysis*

Prior to selecting its sentence, the court noted it had read and considered the probation officer's report and Gastineau's statement in mitigation with its numerous letters.[12] The probation officer's report cited two factors in aggravation (including that Gastineau had taken advantage of a position of trust or confidence to commit the crimes) and one factor in mitigation (he had no prior record).

The court first noted Gastineau had been caught in many lies, both during the investigation and at trial, in which he sought to minimize the extent of his responsibility. The court emphasized that Gastineau occupied a unique position of trust as a law enforcement officer, and had taken advantage of that position to commit the offenses,

___

[12] The letters attested to Gastineau's good character, as well as to his good record as a police officer.

32

which "risks [the] fabric of a civilized society." The court observed that Gastineau, when apprehended, "continuously tried to make himself out to be the victim and [Doe] to be the wrongdoer or the aggressor," when the evidence at trial showed "[c]learly he was in charge [and] . . . in control[, and his] . . . attempts to make himself out to be the victim are revolting and cowardly." Because of these two factors, the court concluded "this case is far more egregious than other instances of the same crime," and therefore selected the upper term for count 1.

Here, the trial court was aware of and considered the factors in mitigation cited by Gastineau, but nevertheless selected the upper term because it identified two factors in aggravation that led it to conclude his crimes were "far more egregious than other instances of the same crime." Gastineau has not clearly shown that sentencing decision was irrational or arbitrary, and we decline his invitation to reweigh the factors and substitute our judgment for that of the trial judge. (*People v. Carmony, supra,* 33 Cal.4th at pp. 376-377.)

## DISPOSITION

The judgment is affirmed.

McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.

33