# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

LUIS RAMON MANZANO ARELLANO,
Defendant and Appellant.

S277962

Sixth Appellate District
H049413

Santa Clara County Superior Court
159386

July 11, 2024

Justice Evans authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Jenkins concurred.

PEOPLE v. ARELLANO

S277962

Opinion of the Court by Evans, J.

Penal Code section 1172.6[1] provides an opportunity for criminal defendants who were convicted of murder under either a natural and probable consequences theory or (in some circumstances) under a felony-murder theory — and who could not be convicted of murder under the law as it currently stands — to file a petition to be resentenced. A successful petitioner is entitled to have the murder "conviction, and any allegations and enhancements attached to the conviction" vacated and to be "resentenced on the remaining charges." (*Id.*, subd. (d)(3).) But a successful petitioner who was charged with murder "generically, and the target offense was not charged" is entitled to have the murder conviction "redesignated" as "the target offense" of the natural and probable consequences theory — or the "underlying felony" of the felony murder — and to be resentenced accordingly. (*Id.*, subd. (e).) The Attorney General asks us to hold that in resentencing a successful petitioner under the latter subdivision, a superior court has the "flexibility" to add to the redesignated conviction uncharged and unproven offense-specific sentencing enhancements or allegations it deems "appropriate."

We hold that the limited resentencing procedure under section 1172.6, subdivision (e) does not permit a court to impose

_____

[1]     All further undesignated references are to this Code.

1

a sentencing enhancement or allegation unless the enhancement or allegation was pled and either proven to the trier of fact or by the defendant's admission in open court. (See § 1170.1, subd. (e).) We therefore affirm the judgment of the Court of Appeal to the extent it ordered stricken a firearm use enhancement that was neither found true by the jury nor admitted by defendant.

## I. BACKGROUND

In January 1992, J. Sacramento Benitez was killed during a residential burglary and attempted robbery. The Santa Clara County District Attorney filed a felony complaint charging defendant Luis Ramon Manzano Arellano and two codefendants, Arturo Mendoza and Jesus Antonio Mandujano, with Benitez's murder (§ 187, subd. (a)), attempted robbery (§§ 664, 211, 212.5, subd. (a)), and first degree burglary (§§ 459, 460, subd. (a)). The murder and attempted robbery counts further alleged that each defendant personally used a firearm during the commission of those offenses. (§§ 1203.06, 12022.5, subd. (a).) Prior to the preliminary hearing, Arellano agreed to plead guilty to second degree murder under certain conditions, including that the firearm use enhancement would be stricken and the robbery and burglary charges dismissed. The court sentenced Arellano to 15 years to life, concurrent to a sentence previously imposed in a different case, and dismissed the robbery and burglary counts as well as the firearm enhancement.[2]

---

[2] We rely largely on the Court of Appeal's factual and procedural history. (*People v. Arellano* (2022) 86 Cal.App.5th 418, 423–428 (*Arellano*); see Cal. Rules of Court, rule 8.500(c)(2).)

In October 2020, Arellano, through counsel, filed the current petition for resentencing. The district attorney initially opposed the petition, arguing that Arellano's "bare-bones declaration of eligibility is insufficient pleading for a prima facie case," but after the court issued an order to show cause, announced that "the People will be stipulating to a resentencing." In light of the district attorney's concession, the court vacated Arellano's murder conviction, stayed the execution of that vacatur pending resentencing, and set the matter for further proceedings to redesignate the charge or charges upon which Arellano would be resentenced.

At a hearing held on April 26, 2021, defense counsel agreed that Arellano "should be resentenced on the target offense" and offered no objection to the district attorney's request that Arellano be resentenced on the originally charged attempted robbery and the firearm use enhancement attached to it. The trial court confirmed the parties' agreement to resentence Arellano on the attempted robbery offense and the firearm enhancement and referred the matter to the probation department for a presentencing report. The court explained its understanding of the impending resentencing under then-current section 1170.95 (now § 1172.6) as follows: "[T]his was a case in which Counts 2 [attempted robbery] and 3 [first degree burglary] did reflect what might be considered target offenses for the murder crime in Count No. 1. Those counts were submitted for dismissal. The defendant never pled to nor admitted them. So this is not a situation where statutorily under [section] 1170.95 I'm sentencing on the, quote, remaining counts. [¶] What I will be doing is by the agreement of the parties redesignating Count No. 1 to the violations of [sections]

664/211/212.5 subdivision (a) with the enhancement under 12022.5 subdivision (a)."

The district attorney's resentencing brief asserted that "[b]ased on information provided by witnesses, detectives were able to identify the suspects, along with a fourth participant who was killed shortly after the crime. Defendants Jesus Mandujano and Arturo Mendoza told police that Petitioner Arellano was present during the robbery/murder. [Arellano] told police he knew other individuals were planning to commit the robbery, but that he did not participate. [Arellano] provided several conflicting statements regarding his whereabouts at the time of the murder." In addition, the district attorney noted the defense's agreement as to the "underlying felony committed by [Arellano]" (i.e., attempted robbery) and "that an arming enhancement pursuant to Penal Code section 12022.5 be imposed."

At this point in the proceedings, defense counsel objected to the inclusion of the firearm enhancement. Counsel argued that former section 1170.95, "[s]ubdivision (e) provides that Mr. Arellano's conviction is to be redesignated as the target offense or underlying felony for resentencing purposes, but it says nothing about adding enhancements that were not previously admitted or found true by a trier of fact." Counsel further argued that including the firearm enhancement would violate Arellano's constitutional rights under *Apprendi v. New Jersey* (2000) 530 U.S. 466.

At the May 24, 2021, hearing on redesignation and resentencing, counsel reiterated her view the court lacked authority to impose the firearm enhancement and asserted "it isn't clear in the evidence . . . as to whether or not Mr. Arellano

possessed a firearm." The court disagreed, reasoning it had the authority to impose the previously dismissed enhancement and finding there was "evidence in the record" to "suggest" Arellano was armed: "[G]iven the fact that there were Penal Code Section 12022.5 subdivision (a) enhancements attached to . . . counts against Mr. Arellano in this case, given the fact that the Court is going to move forward and resentence him only on . . . what was previously Count 2 [attempted robbery], even though I think [*People v. Watson* (2021) 64 Cal.App.5th 474] would give the Court the ability to sentence him for the burglary as well, given the fact that this was a negotiated disposition in which the firearm enhancement was stricken as opposed to . . . a not true finding, and given what the Court does have available to it in the record of conviction regarding the circumstances of the underlying offenses, and it is unfortunate that the stipulation is no longer something the parties can agree upon, but I am going to move forward with resentencing on the attempted robbery charge with the arming allegation pursuant to [section] 12022.5 subdivision (a)."

The "evidence in the record that would suggest that [Arellano] did possess a handgun during the time of the underlying offenses" apparently consisted entirely of hearsay exhibits — including police reports recounting interviews of Arellano and his codefendants as well as a single page from a prison psychological evaluation quoting a correctional counselor's report — Arellano had submitted in support of his resentencing petition. According to the police reports, Arellano made "several conflicting statements" during his police interview about his proximity to the residence at the time of the crime but maintained that he was not present for the attempted robbery. Codefendant Mendoza, on the other hand, told the

police that he, Mandujano, and Arellano each had guns during the course of the robbery. Mandujano similarly told the police that he, Mendoza, and Arellano possessed guns during the incident. The correctional counselor's report dated December 2002, more than 10 years after the murder, recounted what the murder victim's sister had said about the incident: "According to the victim's sister, four young males had come to her door looking for another address. About one hour later, they came back to her house and rang the doorbell. When she opened the door, Jesus Antonio Mandujano and Ramon Arellano rushed past her. Arturo Mendoza came in next and held a gun to the left side of Benitez's sister. Benitez, the victim, appeared from a rear bedroom, saw what was happening and attempted to get back into the bedroom. Mandujano and Arellano saw Benitez and chased him down the hall with guns in their hands. Benitez attempted to shut the bedroom door[,] but Mandujano and Arellano were pushing against it. Mandujano had his hand, which was holding the .45-caliber handgun between the door and the [doorjamb] and fired one round, which struck Benitez in the shoulder. The three then fled on foot from the scene."

Based on this record, the court vacated Arellano's second degree murder conviction as well as the accompanying life sentence and "redesignated Count 1" as attempted robbery with a firearm use enhancement. On redesignated count 1, the court sentenced Arellano to a total term of seven years: the upper term of three years for the attempted robbery and the middle term of four years for the firearm enhancement. The court found the seven-year prison term had been satisfied by time served and released Arellano on parole.

The Court of Appeal reversed and remanded for further proceedings. It found the trial court had erred under section

1172.6, subdivision (e) when it included the firearm enhancement as part of the redesignated conviction. (*Arellano, supra*, 86 Cal.App.5th at pp. 422–423, 437.) Limiting resentencing to the target offense or the underlying felony, the Court of Appeal reasoned, "does not result in absurd consequences" and "simply limits a petitioner's exposure in a relatively definite manner to only a specific offense and avoids the complexities that could arise in deciding which of the myriad sentencing enhancements in our penal law might be applicable to a particular factual scenario." (*Id.* at p. 436.) The court asserted that its interpretation of section 1172.6, subdivision (e) departed from that offered by the First Appellate District, Division Five, in *People v. Howard* (2020) 50 Cal.App.5th 727, 741–742 (*Howard*), which affirmed the addition of an arming enhancement to the redesignated underlying felony. (*Arellano*, at p. 434.)

We granted the Attorney General's petition for review.

## II. DISCUSSION

### A. General Procedures for Resentencing Under Senate Bill No. 1437

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which altered the substantive law of murder for accomplices in two respects. (Stats. 2018, ch. 1015, § 1(f).) First, with certain exceptions, it narrowed the scope of the felony-murder rule so that a "participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs" can be liable for murder only if "[t]he person was the actual killer"; "[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested,

or assisted the actual killer in the commission of murder in the first degree"; or "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(1)–(3).) Second, it now requires that, except in cases of felony murder, "a principal in a crime shall act with malice aforethought" to be convicted of murder. (§ 188, subd. (a)(3).) In other words, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid*.) This aspect of Senate Bill No. 1437 eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine. (*People v. Curiel* (2023) 15 Cal.5th 433, 449.)

Senate Bill No. 1437 also created "a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) The Legislature subsequently amended the statute to expand the categories of those eligible for relief,[3] codify certain aspects of our decision in *Lewis*, and clarify certain procedures at the evidentiary hearing. (Stats. 2021, ch. 551, § 1.) In 2022, former section 1170.95 was renumbered as section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10; see *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).) Neither party claims that these statutory changes affect the issue raised in this appeal, so we generally refer to the current statute in this opinion.

---

[3] The amended statute opened the petitioning procedure to those convicted of attempted murder or manslaughter under a theory that is now invalid. Because the redesignated conviction in this case was murder, we refer solely to murder in describing the operation of the resentencing statute.

Under section 1172.6, subdivision (a), "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts . . . ." "[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met (*id.*, subd. (b)(1)(A)), including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3))." (*Strong, supra*, 13 Cal.5th at p. 708.) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' (§ 1172.6, subd. (c); [citation].) If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. (See § 1172.6, subd. (c); [citation].) If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' (§ 1172.6, subd. (c).)" (*Strong*, at p. 708.)

Within 60 days after the order to show cause has issued, the court is to conduct a hearing to determine whether "the prosecution [can] prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(1).) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any

allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges" (*id*., subd. (d)(3)), "as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence" (*id*., subd. (d)(1)). Where (as here) the murder "was charged generically" (*id*., subd. (e)) — i.e., not limited to any particular theory of liability (see *People v. Eynon* (2021) 68 Cal.App.5th 967, 977) — and the target offense or underlying felony "was not charged," "[t]he petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (§ 1172.6, subd. (e).)

### B. Review of the Text, Structure, and Purpose of Section 1172.6 Demonstrates That Courts May Not Impose Uncharged and Unproven Allegations or Enhancements as Part of Resentencing

We agree with the Court of Appeal that the trial court erred in adding a firearm enhancement to the redesignated attempted robbery conviction. This conclusion rests on a careful review of section 1172.6's text, structure, and purpose. (See *People v. Conley* (2016) 63 Cal.4th 646, 661.)

The text of section 1172.6 describes what should be done if, following the issuance of an order to show cause, the prosecution fails to sustain its burden "to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) The murder conviction as well as "any allegations and enhancements attached to the conviction shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.; see *id*., subd. (a) [authorizing a petition "to be resentenced on any remaining

counts"].) In some cases, though, the murder will have been charged "generically," without any finding on the "target offense or underlying felony." (*Id.*, subd. (e).) In that circumstance, the conviction "shall be redesignated as the target offense or underlying felony for resentencing purposes." (*Ibid.*)

Nothing in the text of section 1172.6 indicates that a court may add an uncharged and unproven allegation or enhancement. To the contrary: when a trial court resentences a petitioner under section 1172.6, subdivision (d)(3), the court must *vacate* "any allegations and enhancements attached to the conviction." The court shall then resentence the petitioner on the "remaining charges" (*ibid.*), which is a clear reference only to the charges that remain — not charges that *could have been* established by the evidence. (See *People v. Fouse* (2024) 98 Cal.App.5th 1131, 1145–1146 (*Fouse*); *People v. Del Rio* (2023) 94 Cal.App.5th 47, 53.) As the Attorney General conceded at oral argument, in resentencing under subdivision (d) "the resentencing court needs to abide by what's already occurred in the case; the prosecution does not get a second bite at the apple."

Nothing in the statutory text suggests there should be a different outcome under section 1172.6, subdivision (e). Subdivision (e) applies when the murder was charged "generically," and the underlying felony or target offense was not charged. The statute does not define "underlying felony" or "target offense," but we agree with the parties that the meaning of these terms is clear. An "underlying felony" refers to the felony underlying a felony-murder theory (§ 1172.6, subd. (f); see *People v. Cavitt* (2004) 33 Cal.4th 187, 193), and the "target offense" refers to the offense the natural and probable consequence of which was murder (§ 1172.6, subd. (f); see *People v. Medina* (2009) 46 Cal.4th 913, 920). Accordingly, under

subdivision (e), a trial court redesignates the murder conviction "as the target offense or underlying felony for resentencing purposes." Because an enhancement or an allegation is not a target offense or an underlying felony (see *People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 758 [" 'enhancement statutes . . . *do not define a crime or offense* but relate to the *penalty* to be imposed under certain circumstances' "]), it follows from the statutory text that resentencing under subdivision (e), like resentencing under subdivision (d)(3), does not contemplate the addition of an enhancement or an allegation that was not previously found to be true.

This reading is supported by the fact that section 1172.6 refers specifically to "allegations and enhancements" in subdivision (d)(3): "If the prosecution fails to sustain its burden of proof, the prior conviction, and *any allegations and enhancements attached to the conviction,* shall be vacated and the petitioner shall be resentenced on the remaining charges." (Italics added.) This shows the Legislature knows how to include sentencing allegations and enhancements when it wants to do so. (See *Walker v. Superior Court* (2021) 12 Cal.5th 177, 199.) The fact that it did not include these additional sentencing components in describing the redesignation and resentencing process in subdivision (e) suggests the Legislature did not intend to grant courts the authority to make findings and impose uncharged and unproven allegations and enhancements. (See *People v. Zapien* (1993) 4 Cal.4th 929, 955 [courts are not " 'empowered to insert what a legislative body has omitted from its enactments' "].)

The structure of the sentencing reform effected by section 1172.6 further supports the conclusion that courts may not add uncharged and unproven enhancements and allegations to the

target offense or underlying felony when resentencing a successful petitioner under subdivision (e). Section 1172.6 explicitly sets out, in detail, the procedure for determining whether to vacate a murder conviction:

Section 1172.6, subdivision (a) provides that a person who was convicted of murder under a theory that is now invalid may file a petition to be resentenced. Subdivisions (b) and (c) detail the procedures governing the content of the petition, its filing, and service; the prosecutor's response; the petitioner's response; and the order to show cause. Once the order to show cause has issued, subdivision (d) directs the court to hold a hearing (unless the parties have stipulated to relief), at which the burden is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder as now defined. Subdivision (d)(3) specifies that either party may offer new or additional evidence to demonstrate the petitioner is or is not guilty of murder as now defined; that the admissibility of evidence at the hearing shall be governed by the Evidence Code, "except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed"; that the court may also consider the procedural history of the case recited in any prior appellate opinion; and that hearsay evidence that was admitted at the preliminary hearing under section 872, subdivision (b) shall be excluded, unless the evidence is admissible under another exception to the hearsay rule. Section 1172.6, subdivision (d)(3) also provides that "substantial evidence" to support a conviction of murder "is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

Had the Legislature intended to allow courts to make findings of uncharged and unproven allegations and enhancements and to include them in the resentencing, one would expect section 1172.6, subdivision (e) to similarly describe how the parties would become apprised of that possibility, the parties' opportunity to be heard, the evidence that could be considered, and the burden and standard of proof for imposing uncharged and unproven allegations and enhancements. That the Legislature did not even mention uncharged and unproven allegations and enhancements — let alone articulate any procedures for identifying and proving the truth of such allegations and enhancements — is a significant indication that courts lack the authority to litigate and then impose such allegations and enhancements during the redesignation and resentencing phase.

Limiting resentencing to the "remaining counts" or "remaining charges" (§ 1172.6, subds. (a), (d)(1) & (3)) — or when the murder was charged "generically," to the "target offense or underlying felony" (*id.*, subd. (e)) — is at the very least consonant with Senate Bill No. 1437's legislative purpose. In uncodified section 1 of the enactment, the Legislature declared "a need for statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1(b).) This "[r]eform" was "needed," the Legislature asserted, "to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (*Id.*, § 1(e).) The legislative history, for its part, further discusses the need to reduce " 'severe, unconstitutional

overcrowding' " and " 'repair the harm of decades of mass incarceration,' " which required the state to " 'provide relief to those with violent felony convictions' " and thereby " 'demonstrate its commitment to bringing overdue reforms to violent felony sentencing and redirecting state resources away from costly investments in corrections.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 7; see also Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Sept. 7, 2018, p. 1 ["The Department of Finance recommends signing this bill because it could reduce the average daily population in state prison, resulting in significant savings to the state due to decreased incarceration"].) We see nothing in these legislative materials to suggest the Legislature contemplated a rule that would permit resentencing courts to augment sentences by imposing previously uncharged and unproven enhancements.

To support his contention that section 1172.6, subdivision (e) allows trial courts to impose uncharged and unproven enhancements at a resentencing proceeding, the Attorney General relies on *Howard*, *supra*, 50 Cal.App.5th 727. There, as here, the prosecutor agreed the murder conviction should be vacated under former section 1170.95. (*Howard*, at p. 733.) The trial court in *Howard* identified the underlying felony as first degree residential burglary and imposed an arming enhancement. (*Id*. at p. 734.) But the arming enhancement in *Howard,* unlike the firearm use enhancement here, *was* pled and proved in connection with the murder. That is, in convicting Howard of first degree murder, the jury found true that Howard had been armed with a firearm in the commission of the offense, and the trial court relied on that finding to impose the arming

enhancement on the underlying felony once the murder conviction had been vacated. (*Id.* at pp. 732, 742.) In affirming the judgment, the Court of Appeal relied on the fact the arming enhancement had been proved "beyond any possible dispute" *at trial*, and Howard did "not argue otherwise." (*Id.* at p. 742.) *Howard* is therefore distinguishable from the situation here, where *no* enhancement was admitted by Arellano nor found true by the jury.[4]

### C. Court of Appeal Decisions Addressing the Redesignation of the Target Offense or Underlying Felony Do Not Support the Imposition of Uncharged and Unproven Sentence Enhancements or Allegations

The Attorney General, like the *Howard* court, argues that because subdivisions (d)(3) and (e) of section 1172.6 " 'intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e),' " resentencing courts should likewise "have flexibility in determining the appropriate sentence for the redesignated conviction and may impose an enhancement that increases the punishment for the offense or offenses." We do not find the analogy persuasive.

In *Howard*, the parties agreed that the underlying felony was burglary, but disagreed on the degree of the offense. (*Howard*, *supra*, 50 Cal.App.5th at p. 730.) The prosecution urged the trial court to redesignate the underlying felony as first degree residential burglary (§ 460, subd. (a)); the defendant, on

---

[4] We accordingly express no view whether the *Howard* court correctly imposed an enhancement that had previously been pled and proved.

the other hand, argued the court was required to redesignate the conviction as the lesser offense of second degree burglary (*id.*, subd. (b)). (*Howard*, at p. 736.) The trial court redesignated the murder conviction as first degree burglary, and the Court of Appeal affirmed. (*Id.* at p. 730.)

The *Howard* court reasoned that "the absence of a first degree burglary instruction and verdict did not preclude the court from redesignating Howard's conviction as first degree burglary, because the evidence at trial demonstrated beyond any dispute the building was a residence." (*Howard*, *supra*, 50 Cal.App.5th at p. 738.) Had the Legislature intended courts to impose the lesser degree of an underlying felony, the court noted, " 'it easily could have done so.' " (*Ibid.*) The court also read subdivisions (d)(3) and (e) of former section 1170.95 — which, as relevant here, are substantially similar to subdivisions (d)(3) and (e) of section 1172.6 — to support its conclusion "that the Legislature intended to grant the trial court flexibility when identifying the underlying felony for resentencing under subdivision (e)." (*Howard*, at p. 739.) Finally, the court deemed the redesignation "consistent" with the legislative purpose to "punish a defendant according to his ' "own level of individual culpability." ' " (*Ibid.*)

Two Courts of Appeal have subsequently relied on *Howard* to permit resentencing courts to redesignate the underlying felony as multiple offenses. (*People v. Silva* (2021) 72 Cal.App.5th 505, 515, 531 (*Silva*) [affirming the redesignation of two counts of first degree murder as four home invasion robberies in concert (§ 213, subd. (a)(1)(A)) and one attempted home invasion robbery in concert]; *People v. Watson*, *supra*, 64 Cal.App.5th at p. 478 (*Watson*) [affirming the redesignation of a

single murder conviction as first degree robbery and first degree burglary].)

We need not decide here whether a court has discretion under section 1172.6, subdivision (e) to redesignate a murder conviction as multiple underlying felonies or target offenses or whether a court must redesignate an underlying offense in any particular degree. Those questions are not before us. But even assuming that courts must have "flexibility" (*Watson, supra*, 64 Cal.App.5th at p. 488; see *Howard, supra*, 50 Cal.App.5th at p. 739 [same]) and "discretion" (*Silva, supra*, 72 Cal.App.5th at p. 532) in redesignating the underlying felony or target offense, it does not follow that courts have the separate authority to search out and impose sentence allegations and enhancements that were not charged and proven at trial.

Under section 1172.6, an underlying felony or target offense is fundamentally distinct from a sentence enhancement or allegation. (See *People v. Superior Court* (*Mendella*), *supra*, 33 Cal.3d at p. 758.) The existence of an underlying felony or target offense is an essential predicate to any successful resentencing petition under section 1172.6. Under the statute, a petitioner may obtain relief only when "all of the following conditions apply": (1) the prosecution was allowed to proceed under a theory of *felony murder*, murder under *the natural and probable consequences doctrine*, or another theory "under which malice is imputed to a person based *solely on that person's participation in a crime*"; (2) the petitioner was convicted of murder; and (3) the petitioner could not be convicted of murder under sections 188 or 189 as amended by Senate Bill No. 1437. (§ 1172.6, subd. (a)(1)–(3), italics added.) Where, as here, the murder was charged generically — and the target offense or

underlying felony was not charged[5] — the murder shall be redesignated "as the target offense or underlying felony for resentencing purposes." (§ 1172.6, subd. (e).) Consequently, the "target offense or underlying felony" under section 1172.6, subdivision (e) is the offense or felony that was the predicate for relief in the first place — i.e., the offense or felony that supported the prosecution's theory of felony murder, murder under the natural and probable consequences doctrine, or any other theory in which malice is imputed based solely on that person's participation in a crime. (See § 1172.6, subd. (a)(1); *Fouse, supra*, 98 Cal.App.5th at p. 1144 ["courts have interpreted this phrase to mean 'the "offense" upon which liability was based for either the natural and probable consequences doctrine or the felony-murder rule' "].)

Neither sentence enhancements nor allegations, on the other hand, form any part of the essential predicate for relief under section 1172.6. A successful petitioner at no point needs to demonstrate that the prosecution was "allowed . . . to proceed under a theory" that one or more enhancements or allegations were true. (§ 1172.6, subd. (a)(1).) Imposing an uncharged and unproven enhancement or allegation, unlike a target offense or

---

[5] The parties agree that the resentencing in this case was governed by section 1172.6, subdivision (e) despite the fact that here, as in *Silva* and *Howard*, an accusatory pleading did at one point charge the underlying felony. (See *Arellano, supra*, 86 Cal.App.5th at pp. 423, 432; *Silva, supra*, 72 Cal.App.5th at p. 512; *Howard, supra*, 50 Cal.App.5th at p. 733, fn. 2.) What matters for purposes of subdivision (e)'s requirement that "the murder was charged generically" and the underlying felony or target offense "was not charged" is that the defendant was neither convicted of the underlying felony or target offense nor was either crime actually litigated.

underlying felony, would therefore more closely resemble a new prosecution, not a resentencing proceeding. (Cf. *Estrada v. Superior Court* (2023) 93 Cal.App.5th 915, 925.) We disagree with the Attorney General that section 1172.6 resentencing proceedings were intended to reopen the prosecution's charging decisions to this extent. Moreover, it is difficult to reconcile the imposition of uncharged and unproven enhancements at a section 1172.6 resentencing proceeding with the requirement under section 1170.1, subdivision (e) that "[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."

Arellano further warns that reopening the charging decisions for sentencing enhancements and allegations would work much mischief because of the sheer number of such provisions in the Penal Code. According to the Office of the State Public Defender, appearing as amicus curiae, California law includes *over 100* unique sentencing enhancements. The Attorney General responds that the universe of possible sentencing enhancements and allegations is more limited. In his view, expressed for the first time at oral argument, resentencing under section 1172.6, subdivision (e) permits only those uncharged and unproven enhancements and allegations that are offense-specific, and not those that are offender-specific. Notably, he does not identify a textual basis for the distinction, given that an enhancement or an allegation is neither an "offense" nor a "felony" under section 1172.6, subdivision (e). (See *People v. Dennis* (1998) 17 Cal.4th 468, 500 [" 'sentence enhancements are not "equivalent" to, nor do they "function" as, substantive offenses' "].) In any event, the number of offense-specific enhancements and allegations is still substantial, and

so is their potential effect. Firearm enhancements alone range from one year (see, e.g., § 12022, subd. (a)) up to 25 years to life (see, e.g., § 12022.53, subd. (d)). The felonies that can support a felony murder, on the other hand, are limited to those that are inherently dangerous. (*People v. Powell* (2018) 5 Cal.5th 921, 942.)

We deem it unlikely the Legislature intended to allow the prosecution to effectively revisit its charging decisions for the entire range of offense-specific sentencing allegations and enhancements every time a petitioner succeeds in setting aside a murder conviction under section 1172.6. We also are skeptical the Legislature intended, without any warning or suggested procedures, to burden superior courts with this degree of factfinding in section 1172.6 resentencing proceedings.

The Attorney General focuses specifically on the legislative finding that "a person should be punished for his or her actions according to his or her own level of individual culpability" (Stats. 2018, ch. 1015, § 1(d)) to argue that courts should be allowed to impose any uncharged and unproven offense-specific sentencing allegations and enhancements so long as they are supported by the record. But the Legislature sought to "fairly address[] the culpability of the individual" in a *particular* way: by "amend[ing] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(e), (f).) It expected the new legislation "to limit convictions and subsequent sentencing" and "assist[] in the reduction of prison overcrowding." (*Id.*, § 1(e).) We do not

believe the legislative goal of proportional punishment would be so unbounded as to direct courts to evaluate culpability anew by adding enhancements and allegations to the underlying felony or target offense that were not previously charged and then proven at trial.

The Attorney General also contends that the imposition of the enhancement here falls within " 'the traditional latitude for sentencing hearings' " (*Howard, supra,* 50 Cal.App.5th at pp. 741–742), but we are not persuaded that such discretion has ever extended to the imposition of uncharged and unproven sentencing allegations and enhancements. The Attorney General has not pointed to any instance, and we can think of none, where courts have been allowed to impose uncharged and unproven sentencing allegations and enhancements that are neither authorized by the text of a resentencing statute nor a predicate to resentencing relief. Selecting among the numerous uncharged and unproven offense-specific sentence enhancements and allegations has not been part of a court's traditional sentencing authority, and nothing in section 1172.6 suggests the Legislature intended to confer such authority.

### III. Conclusion

Courts may not impose uncharged and unproven sentence allegations or enhancements when resentencing a successful petitioner under section 1172.6, subdivision (e). We therefore affirm the judgment of the Court of Appeal to the extent it ordered the firearm use enhancement stricken.

The Court of Appeal also reversed the redesignated conviction for attempted robbery "and remand[ed] the matter for further proceedings to redesignate Arellano's vacated murder conviction as a conviction of the underlying felony and

resentence him," leaving "it to the trial court and parties on remand to determine whether the underlying felony for resentencing purposes should comprise either or both attempted robbery and first degree burglary." (*Arellano, supra,* 86 Cal.App.5th at p. 437.) Neither party, however, asked the Court of Appeal to remand for the trial court to reconsider the redesignated conviction, and neither party in this court has asked for a remand in the event we affirm the striking of the firearm enhancement. Moreover, a remand would be an idle act, given that the trial court at the resentencing proceeding stated its belief that it could redesignate the underlying felony as the burglary (or both the burglary and the attempted robbery) — yet chose not to do so. (See *id.* at p. 427, citing *Watson, supra,* 64 Cal.App.5th 474.) We therefore reverse the judgment of the Court of Appeal to the extent it ordered a remand to the trial court for redesignation of the underlying felony or felonies.

**EVANS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Arellano

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 86 Cal.App.5th 418
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S277962
**Date Filed:** July 11, 2024

_____

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Daniel T. Nishigaya

_____

**Counsel:**

Peter F. Goldscheider, under appointment by the Supreme Court, for Defendant and Appellant.

Galit Lipa, State Public Defender, Adriana Gonzalez, Associate Deputy State Public Defender, AJ Kutchins and Jennifer Hansen, Deputy State Public Defenders, for the Office of the State Public Defender as Amicus Curiae on behalf of Defendant and Appellant.

William J. Arzbaecher for the California Public Defender's Association as Amicus Curiae on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A Swenson, Alan L. Amann, Arlene A. Sevidal, James H. Flaherty III and Christine Y. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Peter F. Goldscheider
Attorney at Law
600 Allerton Street, Suite 201
Redwood City, CA 94063
(650) 323-8296

Christine Y. Friedman
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 738-9050